Argued and submitted April 6, 1992, affirmed March 3, 1993

In the Matter of
Jules DeSassive, Alleged to be a
Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

Jules DeSASSIVE,
*Appellant.*

(9107-96637; CA A71097)

847 P2d 882

Glen H. Downs, Portland, argued the cause and filed the brief for appellant.

Stephanie Andrus, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave B. Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

Appellant appeals from his involuntary civil mental commitment.[1] We review *de novo, State v. O'Neill,* 274 Or 59, 61, 545 P2d 97 (1976), and affirm.

Appellant is 38 years old and has a history of undifferentiated schizophrenia and drinking problems. He has consistently refused to take medication prescribed for his conditions. In July, 1991, he was found unconscious in his hotel room. He was taken to the hospital, and would have died from alcohol poisoning if he had not been treated. Two physicians signed a sworn Notification of Mental Illness. At the hearing, the examiners recommended that appellant be committed. The circuit court found, by clear and convincing evidence, that appellant suffers from a mental disorder, is dangerous to himself, is unable to provide for his basic personal needs, and is not receiving the care necessary for his health and safety.

■ Appellant concedes that he has a mental disorder, but argues that the state did not prove by clear and convincing evidence that he is a "mentally ill person" as defined by ORS 426.005(2).[2] First, he argues that the state failed to prove that his mental disorder causes any danger to himself. We disagree. Appellant refuses to take his medication because

---

[1] Defendant originally appealed in August, 1991, from an order that was not appealable. We gave the circuit court leave to enter a final judgment. After the court did that, defendant then filed an amended notice of appeal on January 15, 1993.

[2] ORS 426.005(2) provides:

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(a) Dangerous to self or others.

"(b) Unable to provide for basic personal needs and is not receiving such care as is necessary for health and safety.

"(c) A person who:

"(A) Is chronically mentally ill, as defined in ORS 426.495;

"(B) Within the previous three years, has twice been placed in a hospital or approved inpatient facility by the division under ORS 426.060;

"(C) Is exhibiting symptoms or behavior substantially similar to those that preceded and led to one or more of the hospitalizations or inpatient placements referred to in subparagraph (B) of this paragraph; and

"(D) Unless treated, will continue, to a reasonable medical probability, to physically or mentally deteriorate so that the person will become a person described under either or both paragraph (a) or (b) of this subsection."

he believes that a representative of the Motor Vehicles Division took him off of it and instead prescribed Centrum vitamins. While in an unmedicated state, defendant is unable to comprehend the dangers of excessive consumption of alcohol or even to comprehend how much he has had to drink. At trial, he was asked about the incident where he had nearly died:

"Q: I'm Dr. Friedman. In the papers it says nine days ago you almost died from alcohol intoxication. Are you aware of how serious it was?

"A: No, I'm not aware of all that. * * *

"Q: How much did you drink?

"A: Four cups out of — out of seven.

"Q: How big were the cups?

"A: Top of a Gillette shaving cap.

"Q: You had an alcohol level of four hundred eighty from four cups?

"A: That's all I ingested and I went, and whatever went from that.

"Q: Did you know that you almost died, you about stopped breathing?

"A: I wasn't aware until I was advised of that in the hospital.

"Q: Okay.

"A: In fact, I was told not to discuss it with anybody under the age of 94. For some reason, they said mention that — to mention — not to tell anybody under the age of 94."

At the hospital, he had told the state examiner that he had to maintain a particular level of alcohol in his bloodstream in order "to fly." He also said that he had been brought to the hospital for "gold toxia coma," which occurs when "the gold runs out of your body." At the same time, he said he was in the hospital because of engine oil found in his blood and he also said that he might have been drinking engine oil.

Defendant's mental disability causes him to refuse his medication, which, in turn, causes his lack of awareness of the effects of alcohol. It is clear that this lack of awareness poses a real danger to him.

■■    Defendant also argues that the state did not show by clear and convincing evidence that he was unable to meet his basic needs and was not receiving necessary care. Again, we disagree. Standing alone, failure to take medication is not sufficient if it only causes a speculative threat. *State v. Brungard*, 101 Or App 67, 789 P2d 683 (1990). In this case, however, defendant's failure to take his medication almost caused his death. As we said in *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992):

"[T]he state need not postpone action until the individual is on the brink of death. The goal of the commitment statute is safe survival, not merely the avoidance of immediate death."

Defendant was receiving some assistance from Mental Health Services West, but that assistance was obviously not adequate to ensure his safety, because it did not prevent him from drinking until he nearly died.

■    Finally, defendant argues that, notwithstanding its finding that he is a "mentally ill person" under ORS 426.005(2), the court did not properly commit him under ORS 426.130,[3] because it did not first find that releasing him to voluntary treatment was not in his best interests. Defendant misinterprets ORS 426.130. It does not require such a finding. *State v. Weyeneth*, 115 Or App 555, 838 P2d 1113 (1992).

Affirmed.

---

[3] ORS 426.130 provides, in part,

"(1) After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If, in the opinion of the court, the person is:

"* * * * *

"(b) Mentally ill, based upon clear and convincing evidence, the court:

"(A) Shall order the release of the individual and dismiss the case if:

"(i) The mentally ill person is willing and able to participate in treatment on a voluntary basis; and

"(ii) The court finds that the person will probably do so.

"* * * * *

"(C) May order commitment of the individual to the division for treatment if, in the opinion of the court, subparagraph (A) or (B) of this paragraph is not in the best interest of the mentally ill person."