Argued and submitted September 6, reversed November 29, 1995

In the Matter of Lance Baxter,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

LANCE BAXTER,
*Appellant.*

(9407-96699; CA A85309)

906 P2d 849

Susan D. Isaacs argued the cause and filed the brief for appellant.

Philip Schradle, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Appellant seeks reversal of an order finding him to be a mentally ill person and committing him to the Mental Health Division. ORS 426.130(1)(b)(C). The trial court determined that he was mentally ill because, due to a mental disorder, he is unable to provide for his basic needs and is not receiving the care necessary for health or safety. ORS 426.005(1)(d)(B).[1] The court also determined that he was unwilling to participate in treatment on a voluntary basis. We review *de novo, State v. O'Neill,* 274 Or 59, 61, 545 P2d 97 (1976), and reverse.

Appellant is schizophrenic. At various times he hears voices and is delusional. He has been civilly committed in Oregon three times since 1987. In March 1994, he was released from Dammasch State Hospital. Shortly thereafter, he traveled to Arizona and lived with his father for about a month. After that he apparently lived on the streets most of the time. Appellant receives Social Security disability income due to his schizophrenia and uses those funds "for surviving."

Appellant believes that he is not schizophrenic. Instead, appellant attributes his problems to narcolepsy, being an ex-drug abuser and eating starchy food. He admits to taking street drugs, including "speed" and diet pills, as well as alcohol for some period of time. He did seek treatment for his "nerves" from a mental health clinic in Arizona not long after his release from Dammasch. The clinic prescribed Haldol, but appellant stopped taking the medication after about a month because he felt he did not need it. In July, shortly after going to a hospital for what appellant describes as dehydration, appellant's father drove him back to Portland. A couple of days later, his father took him to Portland

---

[1] ORS 426.005(1) provides, in part:

"As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"* * * * *

"(d) 'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(A)  Dangerous to self or others.

"(B)  Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

Adventist Medical Center for what appellant calls a hernia. At the hospital, a precommitment investigator found that appellant was angry and hostile.[2] She found that he was unable to provide for his basic needs and that he was a danger to himself. After a hearing, two medical examiners found that appellant is unable to provide for his basic needs, and the trial court agreed.

On appeal, appellant makes no argument that he does not have a mental disorder. However, appellant does contend that the state failed to prove by clear and convincing evidence that he is unable to provide for his basic needs and that he is unwilling to voluntarily seek treatment. Because we conclude that the state failed to meet its burden of proof regarding appellant's ability to provide for his basic needs, we need not address his willingness to seek voluntary treatment.

■■ On *de novo* review, we examine the record to determine if the state has established by clear and convincing evidence that appellant is unable to provide for his basic needs. *State v. Johnson*, 131 Or App 561, 564, 886 P2d 42 (1994). The "basic needs" commitment standard focuses on an individual's capacity to "survive, either through his own resources or with the help of family or friends." *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992). The state must show that, due to a mental disorder, appellant is "unable to obtain some commodity (*e.g.*, food and water) or service (*e.g.*, life-saving medical care) without which he cannot sustain life." *Id*. The state must also show that the threat to appellant's survival is in the near future. *Id*. at 146. The state argues that appellant is unable to provide for his basic needs for both life-saving medication and shelter. We consider appellant's need for medication first.

■ The state argues that schizophrenia is a life-threatening condition and that appellant fails to take his medication for that condition. In support of its argument, the state points out that appellant denies he has schizophrenia, refuses to take his medication, and self-medicates with street drugs for his perceived ailments.

---

[2] Appellant told the investigator that the hospital would have to get his medications right or he would have to fight someone.

The state's argument fails for two reasons. First, there is no medical evidence establishing that schizophrenia is *per se* life-threatening. Second, by itself, failing to take medication is not sufficient if it causes only a speculative threat. *State v. DeSassive*, 118 Or App 383, 387, 847 P2d 882 (1993); *State v. Brungard*, 101 Or App 67, 71, 789 P2d 683, *mod* 102 Or App 509, 794 P2d 1257 (1990), *rev den* 311 Or 427 (1991). Assuming that appellant will not take his medication, the state has still failed to prove any demonstrable consequences that would threaten appellant's survival in the near future. Its reliance on *State v. Woods*, 119 Or App 502, 850 P2d 1172 (1993), is misplaced. There, we specifically found severe consequences from the defendant's failure to take medication in that his "condition requires prescription medications for survival and he cannot function without them." *Id*. at 503. Here, the state failed to produce sufficient evidence through expert or lay testimony that appellant, without medication, would revert to the behavior that he exhibited prior to his hospitalization.[3] Also, the state failed to show that that previous behavior — hostility, lack of sleep, and use of drugs and alcohol — was so severe as to constitute a threat to his survival.

---

[3] The precommitment investigator gave only equivocal testimony in this regard:

"Q: What is your conclusion?

"A: At the time of the interview and I wrote in the report that I felt he was a danger to himself and unable to stay out of harm's way and I did not feel he would be able to take care of his basic needs.

"Q: Why did you come to that conclusion?

"A: At the time he was much more delusional and hostile and angry. He threatened people.

"Q: You have witnessed his demeanor today. If he were released and he could not go back to his mother what would be your opinion?

"A: He is much improved today. He is not quite as delusional as he was. He had some strong ideas but I don't have any solutions. When I interviewed him in the hospital he was different than he is today. This is due to the medication he has been receiving. I would hate to project, you know, in a week in my opinion, in a week's time or two weeks off of his medication he may again decompensate the way he was before the hospitalization.

"* * * * *

"Q: To get to the crux of my question, as you view the problem would he be able to take care of himself if he were released today in your estimation?

"A: To be honest with you I think that is difficult for me to answer but I don't know him and I have no prior history on him."

■ The state next argues that appellant was unable to meet his need for shelter. The state first emphasizes the lack of any parental support, implying that appellant will end up on the streets. Appellant plans to seek lodging from his mother. If that is not possible, he states that he can go to a shelter or "camp out" if the weather is warm. Although the lack of certain shelter is not a good plan, we cannot say that homelessness by itself is sufficient grounds for commitment.

The state also contends that appellant has shown he is unable to care for himself when left on his own. Although not clearly stated, the state appears to be referring to appellant's statements that he suffered from sleeplessness, dehydration and a hernia while on his own in Arizona. Even if those ailments were real rather than imaginary, the state has failed to show that the ailments were so severe as to threaten appellant's survival. In fact, there was evidence that the ailments were not particularly serious. Appellant was not malnourished despite the fact that he was homeless for two to three months prior to the hearing.

The state has failed to demonstrate that it is highly probable that appellant is unable to provide for his basic needs.

Reversed.