Argued and submitted July 21, 2004, reversed March 2, 2005

In the Matter of Susan D. Miller,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## SUSAN D. MILLER,
*Appellant.*

0307-68886; A122328

107 P3d 683

Kirkland T. Roberts argued the cause and filed the brief for appellant.

Bethany Cunningham, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Thomas D. Cobb, Assistant Attorney General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

The trial court committed appellant to the custody of the Mental Health Division after finding that, because of a mental disorder, she was a danger to others and was unable to provide for her basic personal needs and was not receiving the care necessary for her health or safety. ORS 426.005(1)(d)(A), (B). Appellant argues that the state did not carry its burden for involuntary commitment. On *de novo* review, *State v. Cunningham*, 190 Or App 202, 204, 78 P3d 125 (2003), we reverse.

■      We review the facts as they existed on the date of the commitment hearing. *State v. North*, 189 Or App 518, 520, 76 P3d 685 (2003). The evidence at the hearing consisted of testimony by a Portland Police Officer, Rico, testimony by appellant, and the nonhearsay portions of a precommitment investigation report. The doctor who wrote the report stated that he attempted to interview appellant in her hospital room, but that she refused to answer questions and insisted that he leave. His only observations of appellant were that she was supported by a walker, used a menacing tone when she told him to leave, and mumbled unintelligibly afterwards.

Officer Rico offered more firsthand observations. She testified that she and other officers had been dispatched to appellant's home, although she did not indicate who had called the police or why. Rico discovered appellant in her backyard, behind some bushes. Appellant was nude from the waist down, looked very frail, and her skin was dry and cracked. She was very agitated and upset that the officers were there. She had a cane that she used to help her walk back and forth behind the bushes. Rico testified that she was concerned about when appellant had last eaten, but did not specify any physical characteristics of malnourishment or otherwise indicate why she thought that appellant may not have eaten recently. Nonetheless, her concern about appellant not having eaten led her to believe that she could not leave appellant behind the bushes, so she and another officer tried to coax appellant out.

When appellant refused to leave the bushes, Rico and two or three other officers decided to "help her come out."

One officer circled around behind the bushes, while Rico and a third officer advanced on appellant. When Rico reached toward appellant to grab her, appellant struck Rico's arm with her cane. The other advancing officer then grabbed appellant and pulled her from the bushes. Appellant struggled with the officer, and three other officers joined in the struggle to subdue her. Rico and at least one other officer received several scratches and bruises from the struggle. Rico took appellant to a hospital, where appellant again forcibly resisted the officers' attempts to bring her inside.

Appellant's testimony was largely incoherent and inaudible. Based on indications of a problem with her foot, the court asked her several questions about it, but her answers were mostly nonresponsive. She said that she thought her foot was broken and that she did not like broken feet, but she was unable to say how she had broken it. She also said that she did not want to speak to a psychiatrist or psychologist but, when the judge asked whether she would like him to let her out or whether she would like to stay in the hospital, she responded, "That's fine as far as I know." Her attorney apparently took that to mean that staying in the hospital was fine, because the attorney stated, "Sounds like Ms. Miller doesn't mind staying here. I always prefer that dangerousness to others is not (inaudible)."

Neither of the examiners asked appellant any questions, but both concluded that appellant should be committed on the grounds that, due to a mental disorder, she was a danger to others and unable to provide for her basic personal needs. One of the examiners additionally concluded that appellant was a danger to herself. The trial court agreed with the first two conclusions and committed appellant on both grounds.

■ On appeal, appellant does not challenge the conclusion that she has a mental disorder. Instead, she argues that the state did not produce clear and convincing evidence that, because of her mental disorder, she is either dangerous to others or unable to provide for her basic needs. The state responds that appellant stipulated to the commitment or, at least, invited any error that the trial court made by agreeing

to the commitment. In any case, the state argues, it carried its evidentiary burden for the commitment.

In asserting that appellant agreed to the commitment, the state points to the following exchange between her and the trial court:

"THE COURT: Do you want me to let you out today or do you want to stay in the hospital?

"THE WITNESS: (inaudible)

"THE COURT: Is that all right?

"MS. MILLER: That's fine as far as I know."

The state further contends that appellant's attorney expressed approval of a basic needs commitment when the attorney stated, "Sounds like Ms. Miller doesn't mind staying here. I always prefer that dangerousness to others is not (inaudible)." The state argues that appellant's statement and those of her attorney amount to a stipulation to commitment and invited the trial court to commit error by accepting that stipulation.

We have stated that "[t]he fact that [an] appellant stipulated to the facts and to his commitment may allow the court to expedite some aspects of the hearing procedure[.]" *State v. Allison*, 129 Or App 47, 50, 877 P2d 660 (1994); *see also State v. Waters*, 165 Or App 645, 652, 997 P2d 279 (2000) (agreeing with *Allison*). In those cases, counsel for the appellants explicitly stipulated to the commitment, and the courts accepted the stipulations and committed the appellants on the basis of those stipulations. There was no such explicit stipulation here, however, but only ambiguous statements. The court asked appellant whether she would like to stay in the hospital or leave it, and she responded, "That's fine as far as I know." She could have been referring to either staying in or leaving the hospital. The statement therefore did not amount to a stipulation. Nor did her attorney's interpretation of her statement amount to a stipulation. The attorney said only that it "[s]ounds like she doesn't mind staying here." That is not a stipulation that appellant should be involuntarily committed. Moreover, counsel's statement "I always prefer that dangerousness to others is not (inaudible)"—is not,

as the state argues, an agreement to a basic needs commitment. It is a sentence fragment whose import is impossible to discern from this record.

Moreover, the statements of appellant and her counsel did not invite the court to commit error. There is no indication in the record that the court interpreted those statements as stipulations. In addition, unlike the courts in *Allison* and *Waters*, the court here did not commit appellant on the ground that she agreed to the commitment. Instead, the court adopted the findings and conclusions of the examiners that appellant was dangerous to others and unable to care for her basic needs, and the court expressly based the commitment on those grounds. We accordingly address whether the court erred in doing so.

■■ The state had the burden to prove by clear and convincing evidence that appellant either was a danger to herself or others or was unable to care for her basic needs and was not receiving necessary care. *See* ORS 426.005 (defining mentally ill person); ORS 426.130(1)(b) (stating the clear and convincing evidence standard for a court's determination of mental illness). In determining whether a person poses a danger to others, it is appropriate for a court to consider the testimony of mental health experts, a person's past acts, and the person's apparent condition at the time of the hearing. *State v. Furnish*, 86 Or App 194, 197, 738 P2d 607 (1987). Past threats coupled with violent acts may constitute clear and convincing evidence that a person is dangerous to others if "there is no indication that such violence is an isolated occurrence." *State v. Allmendinger*, 36 Or App 381, 384, 584 P2d 773 (1978). "But a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person" pursuant to ORS 426.005. *State v. Lucas*, 31 Or App 947, 950, 571 P2d 1275 (1977).

Here, the state offered no evidence from mental health experts about appellant's future dangerousness. In addition, although appellant appeared delusional at the hearing, there is no indication that she was threatening or violent. The state relies solely on appellant's past acts to

prove that she is a danger to others. The only past act that indicates that appellant is dangerous is the incident recounted by Rico where appellant forcibly resisted police officers when they attempted to grab her and pull her out of the bushes in her backyard. Although the doctor who conducted the precommitment investigation reported that appellant used a "menacing" tone when she told him to leave her room, there is no evidence that appellant ever threatened violence or became violent aside from the seemingly isolated incident with the police officers.

The state argues that, because Rico's uncontroverted testimony was that she was trying to help appellant, appellant's violence toward Rico demonstrates that it is highly probable that appellant will react violently to those who try to help her. We disagree. Although Rico testified that she and the other officers were trying to help appellant, she also testified that the way in which they tried to help appellant was to encircle her and try to grab hold of her and forcibly remove her from her backyard. Appellant's actions appear to have been in response to an unusual and threatening situation. As noted, the state produced no expert testimony or other evidence that the incident was not an isolated episode or that it "clearly forms the foundation for a prediction of future dangerousness." The mere recitation of that incident, without more, cannot serve as basis for concluding that appellant has a propensity to react violently to those who try to help her or that there is a high probability that she will commit a violent act in the future. The state did not prove by clear and convincing evidence that appellant was dangerous to others.

■■ The state also failed to carry its burden of proving that appellant was unable to care for her basic needs. In *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992), we explained:

> "The legislature's 'basic needs' commitment standard focuses on the capacity of the individual to survive, either through his own resources or with the help of family or friends. The state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity (*e.g.*, food and water) or

service (*e.g.*, life-saving medical care) without which he cannot sustain life. The statute does not express a standard by which the imminence of the threat to life is to be measured."

To demonstrate that appellant was unable to obtain basic commodities, such as food and water, the state relies on Rico's testimony that appellant's skin was dry and cracked and that Rico was concerned about when appellant had last eaten.[1] The state argues that we can infer from appellant's dry skin that she had been outside for some time and was dehydrated. From that inference, and from Rico's vague concern, the state asks us to infer that appellant was unable to obtain food and water. The clear and convincing evidence standard, however, precludes such an inferential leap. "Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment." *State v. Ayala,* 164 Or App 399, 404, 991 P2d 1100 (1999). The state offered no evidence proving that appellant was unable to obtain or had not been provided with food or water.

The state also emphasizes the fact that appellant had a broken foot that limited her mobility as proof that she was unable to care for herself. However, the state presented no evidence of how appellant broke her foot, nor about whether she sought medical care for it, nor about the severity of the injury. *See id.* (basic needs commitment was inappropriate where there was no evidence of the severity of the appellant's condition, the type of medical care necessary to treat the condition, or whether the appellant's mental disorder would have prevented her from complying with a necessary treatment program).

The state further argues that appellant has no adequate living situation to return to if released. It relies on Rico's statement, in response to a question about whether she knew whether appellant had a home to return to, that she did

---

[1] The state also attempts to rely on the notification of mental illness form, *see* ORS 426.070, as evidence that appellant was dehydrated and had not eaten. That form, however, was not offered as an exhibit or received into evidence and cannot be used as substantive evidence of appellant's condition. We therefore do not consider it.

not know. The state interprets Rico's statement as expressing doubt about whether appellant could return home. However, there is no indication in the record that Rico had any information about defendant's living situation. The state also asserts that defendant had few possessions when the police officers found her and argues that it is therefore unlikely that appellant could safely survive on her own. But, again, there is no evidence that appellant was homeless or that the possessions she had on her person were her only possessions. Indeed, Rico testified that appellant was in the backyard of her own home when the officers approached her.

Finally, the state argues that appellant cannot provide for her basic needs because she appeared irrational at the hearing and could not answer basic questions. Appellant's irrationality at the hearing evidences that she suffers from a mental disorder, but it does not demonstrate that she is unable to obtain some basic commodity necessary to her survival or that she will not receive such basic commodities with the help of family or friends. ORS 426.005 precludes a court from committing a person on the basis of a mental disorder alone.

In sum, the state failed to produce clear and convincing evidence that appellant either was a danger to others or was unable to provide for her basic personal needs and was not receiving the care necessary for her health or safety. Consequently, the state failed to prove that appellant was a mentally ill person within the meaning of ORS 426.005(1)(d)(A) or (B), and the trial court erred in committing her to the Mental Health Division.

Reversed.