Submitted December 9, 2008, reversed April 22, 2009

In the Matter of M. C.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

M. C.,
*Appellant.*

Clackamas County Circuit Court
M070528; A136041

206 P3d 1096

Gay Canaday filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Appellant appeals from an order of involuntary mental commitment pursuant to ORS 426.130. On appeal, he challenges the sufficiency of the evidence to commit him. We review *de novo, State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), and reverse.

The trial court found that appellant was not dangerous to himself or to others as a result of his mental disorder. However, the court concluded, "Based upon his inability to deal with his moods; his obvious poor judgment; I would say he could not safely survive. And I really am hesitating, [M], because you're one of the nicest guys I have dealt with here in the hospital."

■ ORS 426.130(1)(b) requires that, before a court can commit a person involuntarily, the court must find that the person is mentally ill "based upon clear and convincing evidence." In *State v. King*, 177 Or App 373, 377, 34 P3d 739 (2001), we defined clear and convincing evidence as "evidence that makes the fact in issue highly probable." ORS 426.005(1)(d) provides that a " '[m]entally ill person' means a person who, because of a mental disorder, is * * * (B) [u]nable to provide for basic personal needs and is not receiving such care as is necessary for health or safety." Here, the state must prove that it is highly probable that appellant is unable to provide for his own basic needs.

■ In *State v. Puha*, 208 Or App 453, 463, 144 P3d 1044 (2006), we reiterated the principle that, to meet the "basic needs" standard imposed by the legislature, there must be an imminent threat to health and safety, *i.e.*, the state must show by clear and convincing evidence that, at the time of the hearing, the likelihood exists that the person probably will not survive in the near future because the person is unable to provide for basic personal needs.

Here, the evidence shows that, just prior to his hospitalization, appellant had gone to Pendleton to work on a vehicle that had belonged to his deceased father. While there, he stayed in a motel for a few nights paid for by the Salvation Army. Thereafter, appellant stayed on the street for a period of days before he was taken to a hospital emergency room.

Appellant told an interviewer that he "nearly froze" while in Pendleton. He was discharged from the emergency room and subsequently returned to Portland. Appellant participates in the Passport Program through the Clackamas County Health Department, which offers ongoing mental health out-patient treatment. After returning to Portland, appellant checked in with his case coordinator, who advised him to check into a local hospital. There were no beds available in the hospital that day, so he was transferred to a hospital in Roseburg for one day.

After being returned from Roseburg to a Portland hospital, appellant met with an interviewer. During the interview, appellant became angry. He wanted to be released, and the interviewer wanted him to stay in the hospital. The interviewer described what happened next:

> "[I]t progressed to the point with me where my better judg-ment told me I need[ed] to leave, I need[ed] to be out of there. I did feel threatened. I mean, we were sitting at this table[,] and at one point he got up and we were kind of squared off. That's the wrong word. We weren't squared off, we were face-to-face. And then he turned away. But, it just—you know, I wasn't sure what was going to happen. It was unpredictable.

> "That's my concern. I think when he gets in that phase, it's unpredictable what he might do."

On cross-examination, the interviewer testified that appellant is a 22-year-old high school graduate who has an income from Social Security that exceeds $600 per month and receives health benefits as part of his voluntary participation with the Clackamas County Health Department program. At the time of hearing, appellant continued to be eligible for treatment and benefits through the Passport Program. In the interviewer's opinion, appellant could benefit from mood-stabilizing medication, but none had been offered to him as far as the interviewer was aware. In the interviewer's opinion and in the opinion of the examiners, appellant was unable to provide for his own basic needs as a result of his mental disorder.

At the time of the hearing, appellant did not have any identification that would permit him access to a shelter

for homeless people. However, he testified that his case counselor would help him obtain new identification and that, if released, he would try to live with his mother temporarily or go to a shelter. He testified that he did not believe that he could benefit from further hospitalization but was willing to take medication to stabilize his moods and that such medication had helped him in the past. Apparently, appellant suffers from kidney dysplasia and high blood pressure, but the record was not developed during the hearing to show whether those medical issues present an imminent threat to his health if not treated. As to his confrontation with the interviewer, appellant testified that his mother had a plan for a place for him to stay but a physician at the hospital wanted him to stay there. Appellant testified that, during the interview with the interviewer, he "got real confused. When I get confused, I really get angry." Appellant also testified that he "didn't mean to take it out on [the interviewer]." After the interviewer left, appellant agreed that he had continued to pound the table and the walls of the room that he was in and that the hospital staff had to intervene by giving him an injection.

On appeal, the state argues that the above evidence satisfies its burden of proof. According to the state, the evidence demonstrates that appellant had no firm plans as to where he would live if he was discharged and that he was unable to make appropriate decisions in other aspects of his life. The state points to the evidence that appellant destroyed his identification card in a fit of anger, squandered his disability income on drugs, and had chosen to live on the streets in Pendleton for a week during the middle of winter because he would rather "be homeless and live on the road."

The difficulty with the state's argument is that ORS 426.005(1)(d) requires more than evidence of speculative threats to safe survival. *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992). Although it is correct that the state need not postpone commitment until the mentally ill person is on the brink of death, the goal of the statute is to authorize involuntary commitment only when an imminent threat to safe survival exists. The only evidence of that kind in the record is evidence of the events that occurred in Pendleton.

However, the evidence in the record is not clear and convincing evidence that appellant's mental condition at the time of the hearing would cause him to repeat the experience. Rather, appellant's then-present mental condition appeared to require mood stabilizers to assist him in anger management. On this record, we are unable to agree with the trial court that the state carried its burden of proof.

Reversed.