238 P.3d 407 (2010)
236 Or. App. 598
In the Matter of A.M.-M., Alleged to be a Mentally Ill Person.
STATE of Oregon, Respondent,
v.
A.M.-M., Appellant.
090363248; A141618.
Court of Appeals of Oregon.
Argued and Submitted July 02, 2010.
Decided August 11, 2010.
*408 Rebecca Carter filed the brief for appellant.
Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before LANDAU, Presiding Judge, and ORTEGA, Judge, and SERCOMBE, Judge.
SERCOMBE, J.
Appellant seeks reversal of a judgment adjudicating him to be mentally ill and committing him to the Oregon Health Authority under ORS 426.130(1)(b)(C).[1] Appellant asserts that the state failed to prove that, because of his mental disorder, he could not provide for his basic needs or was a danger to himself. ORS 426.005(1)(e).[2] Appellant *409 further contends that his release was required because the evidence showed that he was "willing and able to participate in treatment on a voluntary basis." ORS 426.130(1)(b)(A)(i). The state concedes that there is insufficient evidence to support a finding that appellant's disorder caused him to be a danger to himself, but maintains that the evidence shows that he is unable to provide for his basic needs. On de novo review[3], State v. O'Neill, 274 Or. 59, 61, 545 P.2d 97 (1976), we accept the state's concession, and, because we conclude that there was insufficient evidence that appellant was unable to meet his basic needs, we reverse.
We review the facts as they existed on the date of the commitment hearing. State v. Miller, 198 Or.App. 153, 155, 107 P.3d 683 (2005). Here, the record establishes the following facts. Appellant was diagnosed with schizophrenia and had been living with his grandmother for 10 to 12 years. Due to his mental illness, appellant did not want to leave his grandmother's home. Appellant treated his schizophrenia with medication. His mother regularly obtained the medication from a mental health service provider and delivered it to him. After appellant missed appointments at the provider, it refused to dispense the medication to appellant's mother. Appellant discontinued that treatment.
On December 1, 2008after appellant failed to take his medication for three monthshe destroyed his bedroom, smeared feces on the floors and walls, and injured his hands causing them to bleed. Appellant's grandmother testified that appellant's room was "absolutely totally destroyed this time. Every picturethe only thing not broken was a windowthe window in his bedroom. Anything breakable was on the floor in pieces." Appellant told the court that he incurred cuts on his hands by "pushing glass through a wall." At his commitment hearing, appellant stated that he did not intend to cut or hurt himself when pushing glass through walls, but that it was part of a religious battle he was going through at the time and that the battle had since ended. Appellant also stated that the smearing of feces was part of that battle.
Appellant's grandmother is frail and elderly and has heart problems. Due to these physical ailments and the stress of appellant's behavior while off medication, she testified that he could no longer live at her home. Appellant's grandmother described him as a very charming, loving, and responsive person when he is on medication. Appellant helped her with groceries, garbage, laundry, and other household tasks. However, when appellant was off his medication, his grandmother stated that she had to ask for help with household tasks, and his assistance was not prompt.
Appellant manages his own money, receives approximately $400 in Social Security funds each month, and has about $800 in a checking account. He also has clean hygiene and has not gained or lost weight recently. During mental examinations at the commitment hearing, appellant gave varied answers regarding his living plans on release. He did not fully understand that he could not return to live at his grandmother's home and proposed that he would live by a lake if released. Appellant testified that he did not want to return to Bridge View, a living facility where he had stayed in the past, but at certain points in his testimony he agreed to go to there and comply with a medication regimen.
Appellant was examined by two mental health examiners during the civil commitment hearing. After questioning appellant, examiner David Mohler testified that he believed that appellant suffered from a schizophrenic mental disorder and expressed concern about appellant's destructive behavior, "particularly pushing his hands through glass and spreading his feces around," which Mohler described as a "regressed schizophrenic *410 activity." In his examiner's report, Mohler stated that appellant "is unable to articulate any plan for self care even though he has resources he could use to secure food and housing." Examiner Fonda Edelson drew a similar determination, testifying that appellant's disorganization, impaired judgment, and schizophrenic traits made him unable to care for himself. In her examiner's report, Edelson stated that appellant's inability "to formulate and execute a plan for his basic needs" was evidence of appellant's inability to provide for his basic needs.
The trial court agreed with the examiners' assessments and had appellant committed because his mental disorder made him unable to provide for his basic needs and he was a danger to himself. The court stated that
"he continues to be very psychotic, he continues to be involved in spiritual battles, he-and continues to be unable to organize his thoughts well enough to provide me with a reasonable and credible plan."
The court ordered appellant to be committed for a period not to exceed 180 days.
On appeal, appellant argues that the state failed to prove, by clear and convincing evidence, that his mental disorder made him unable to provide for his basic needs or that he was a danger to himself. As noted earlier, we agree that there was insufficient evidence to prove appellant was a danger to himself. For the reasons that follow, we agree with appellant that the state failed to prove that he was mentally ill on the ground that his mental disorder made him unable to provide for his basic needs.
ORS 426.005(1)(e)(B) defines a "mentally ill person" as a person, who, because of a mental disorder, is "[u]nable to provide for basic personal needs and is not receiving such care as is necessary for health or safety." Sufficient proof to commit a "mentally ill person" on that basis under ORS 426.130(1)(b) "requires more than evidence of speculative threats to safe survival." State v. M.C., 227 Or.App. 530, 534, 206 P.3d 1096 (2009). In order to commit a person on "basic needs" grounds,
"[t]he state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity (e.g., food and water) or service (e.g., life-saving medical care) without which he cannot sustain life."
State v. Bunting, 112 Or.App. 143, 145, 826 P.2d 1060 (1992).
Put another way, the "basic needs" standard requires clear and convincing evidence that "there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs." Id. at 146, 826 P.2d 1060. Furthermore, the "clear and convincing evidence" standard of proof requires that the state produce evidence that is of "extraordinary persuasiveness" and that makes the facts at issue "highly probable." State v. Allen, 209 Or.App. 647, 652, 149 P.3d 289 (2006). Although "[t]he goal of the commitment statute is safe survival, not merely the avoidance of immediate death," and therefore the state "need not postpone action until the individual is on the brink of death," Bunting, 112 Or.App. at 145, 826 P.2d 1060, the state has not shown in this case that appellant's refusal to take his medication and inability to organize a plan for his care presents an imminent likelihood that he would not survive in the near future.
The facts in this case are analogous to those in State v. Baxter, 138 Or.App. 94, 906 P.2d 849 (1995). Although fact-matching in mental commitment cases is not particularly useful and each case must be determined on its own facts, State v. Jayne, 174 Or.App. 74, 82, 23 P.3d 990 (2001), we find the reasoning in Baxter persuasive in the context of this case. In Baxter, the appellant was committed because the court determined that his mental disorder rendered him unable to provide for his basic needs. In that case, the appellant was diagnosed with schizophrenia, was off his medication, had been committed to several hospitals for mental treatments, received Social Security funds, and planned to go to a shelter or "camp out" on release. 138 Or.App. at 99, 906 P.2d 849. On appeal, we held that the state failed to meet its burden, reasoning that "there is no medical evidence establishing that schizophrenia is per se life-threatening" and that, "by itself, failing to take medication is not *411 sufficient if it causes only a speculative threat." Id. at 98, 906 P.2d 849 (emphasis in the original). Moreover, we stated that, "[a]lthough the lack of certain shelter is not a good plan, we cannot say that homelessness by itself is sufficient grounds for commitment." Id. at 99, 906 P.2d 849.
Like the alleged mentally ill person in Baxter, appellant was diagnosed with schizophrenia, was off his medication, subsisted on Social Security funds, and planned to live without shelter on release. As in Baxter, appellant's failure to treat his schizophrenia was proved to be only a speculative threat to his well-being. The minor cuts that appellant inflicted on himself while pushing glass through walls were not life threatening. Appellant's failure to take his prescribed medication caused a change in his behavior, but that behavior was not so severe as to cause a threat to his survival. Although it seems plausible that appellant will not have housing services available on release, as we said in Baxter, homelessness is not adequate justification for involuntary commitment. Id. at 99, 906 P.2d 849. In order for homelessness to be sufficient justification, there needs to be "a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety." Bunting, 112 Or.App. at 146, 826 P.2d 1060. Here, nothing in the record indicates that to be the case.
Appellant has not lacked housing, food, or medical care in the past. There is little evidence in the record from which to infer the effect of his untreated mental disorder on the provision of those necessities. To the contrary, appellant had roughly $800 in a bank account with which he could buy food and water and obtain shelter. Appellant claimed to have health insurance through which he can obtain medical services as needed. The testimony by appellant's grandmother, mother, and mental health examiners claiming that appellant would be unable to provide for his basic needs on release was purely speculative. Because the mental commitment statute "requires more than evidence of speculative threats to safe survival," M.C., 227 Or.App. at 534, 206 P.3d 1096, the record in this case was insufficient to prove by clear and convincing evidence that appellant was unable to provide for his basic needs. Accordingly, the state failed to prove that appellant was "mentally ill" and qualified for involuntary commitment under ORS 426.130(1).
Reversed.
NOTES
[1] ORS 426.130(1) provides:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If, in the opinion of the court, the person is:
"* * * * *
"(b) Mentally ill based upon clear and convincing evidence, the court:
"* * * * *
"(C) May order commitment of the individual to the Oregon Health Authority for treatment if, in the opinion of the court, subparagraph (A) or (B) of this paragraph is not in the best interest of the mentally ill person. If the court orders commitment under this subparagraph:
"(i) The court shall establish a period of commitment.
"(ii) The authority may place the committed person in outpatient commitment under ORS 426.127."
[2] ORS 426.005(1)(e) provides, in part, that a "`[m]entally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(A) Dangerous to self or others.
"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."
[3] This appeal was filed before June 4, 2009, the effective date of Oregon Laws 2009, chapter 231. That law, which amends ORS 19.415, changed the de novo standard of review for equitable proceedings that we have applied in review of mental commitment cases.