Submitted October 31, 2018, reversed August 19, 2020

In the Matter of C. H.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

C. H.,
*Appellant.*

Marion County Circuit Court
16CC06639; A163450

473 P3d 60

Appellant challenges an order committing her to the custody of the Oregon Health Authority for a period of time not to exceed 180 days on the ground that she has a mental illness. Appellant argues that the evidence is insufficient to support the trial court's ruling that, due to her mental disorder, she was unable to provide for her basic needs, which is a basis for commitment under ORS 426.005(1)(f)(B). *Held*: Viewing the facts in the light most favorable to the trial court's disposition, the record contained insufficient evidence that appellant's mental disorder made her unable to provide for her basic needs necessary to avoid serious physical harm in the near future.

Reversed.

Rafael A Caso, Judge pro tempore.

Joseph DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Keith L. Kutler, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

POWERS, J.

Reversed.

**POWERS, J.**

Appellant challenges an order committing her to the custody of the Oregon Health Authority (OHA) for a period of time not to exceed 180 days on the ground that she has a mental illness. ORS 426.130. Appellant argues that the evidence is insufficient to support the trial court's ruling that, due to her mental disorder, she was unable to provide for her basic needs, which is a basis for commitment under ORS 426.005(1)(f)(B). We agree and reverse.

Neither party has requested that we review the record *de novo*, and we conclude that this is not an "exceptional" case that warrants *de novo* review. *See* ORAP 5.40 (8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). Thus, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. W. W.*, 289 Or App 724, 726, 410 P3d 1032 (2018) (citation omitted).

In October 2016, appellant, who was 68 years old at the time, called police to take her to the hospital after being denied entry to the Union Gospel Mission of Salem. Appellant's clothes were wet, she was cold and hungry, had no shoes, no money, and no place to get dry and warm. Appellant has bipolar disorder and had been placed in psychiatric hospitals for short-term stays in the past.

Police brought appellant to the hospital, where doctors discovered that appellant had a fractured wrist, which could require surgery if not cared for properly. Doctors also prescribed appellant medication for her bipolar disorder, which she willingly took, and she willingly ate the food that the hospital provided. However, appellant was unruly at the hospital: she wandered into other patient's rooms, pinched people on their bottoms, and yelled obscenities at hospital staff. Prior to this hospitalization, appellant was referred to the Adult Behavioral Health Clinic (ABH) for two appointments but did not attend either appointment.

Based on the recommendation of medical professionals, the state requested that a commitment hearing be held to determine whether appellant had a mental disorder that made her incapable of providing for her basic needs. Appellant, her adult daughter, and Anderson, a mental health examiner, all testified at the hearing.

Anderson interviewed appellant and reviewed her records. He testified at the hearing that he did not believe appellant was a danger to herself or to others, but that she was incapable of providing for her basic needs. Specifically, Anderson testified that he believed that appellant was "making potentially life-threatening decisions," and listed the threats that appellant faced: she was unable to keep herself dry in cold weather; she was wandering barefoot; she had multiple contacts with law enforcement and psychiatric hospitals; she was aggressive at the hospital; she refused care for her injured wrist; and she was disorganized. Because Anderson believed that appellant's mental illness made her unable to provide for her basic needs, he recommended that appellant be committed to the custody of OHA.

During the hearing, appellant often interrupted and made contradictory statements. For example, appellant initially stated that her daughter provided her with money, but later stated that her daughter was lying and that her daughter stole appellant's money. Appellant also testified that she lived with her husband but could not find him; however, appellant's daughter testified that she did not believe that appellant was married.

Appellant testified that, if released from the hospital, she wanted to go home with her daughter. If she could not stay with her daughter, appellant told the court that she would get a motel for one night and later rent an apartment. Appellant stated that she had a bank account with money and that her daughter gave her money. Appellant testified that she could buy new clothes when she needed, she would attend future appointments with ABH, she would continue taking her prescribed medication, and that she could obtain food by visiting the store across the street from the motel where she had rented a room in the past. Appellant's

daughter testified that appellant could not stay with her and that appellant received income through disability. Her daughter testified that appellant did not "have the ability to take care of herself if she's on the streets."

The state argued that, if appellant did not have money for food at the time of her hospitalization, then she will not have money for a hotel, clothes, or food if she is released. After noting that appellant had been trespassed from the Mission, the state argued that, if appellant were released, the state "is concerned that the same events would happen."

The trial court concluded that appellant was a person with a mental disorder and that appellant was unable to provide for her own basic needs. After recognizing that houselessness[1] or homelessness is insufficient on its own to support a basic-needs commitment, the trial court explained:

> "I do find we have homelessness, plus a lack of insight, plus [appellant]'s own statements that she had not been eating, was hungry, was not able to provide for her own food. Regardless of her belief where she would get some food, she—she doesn't adequately express how she would do that to this Court. She's disorganized.
>
> "And so based on that, I do find by clear and convincing evidence [that appellant is] a person with a mental illness."[2]

Accordingly, the court committed appellant to the custody of OHA for a period not to exceed 180 days.

---

[1] We use the term "houselessness," instead of "homelessness," because even if an individual is unhoused, the individual may still have a place called home. *See Hooper v. City of Seattle, Washington*, No C17-0077RSM, 2020 WL 3100855 at *1 n 1 (WD Wash, June 11, 2020) (adopting the term "unhoused" because "people who lack permanent or stable housing still have homes in which they sleep and go about their private affairs").

[2] As discussed below, the legislature amended the standard for "basic needs." *Former* ORS 426.005(1)(e) (2013), *amended by* Or Laws 2015, ch 433, § 1, *renumbered as* ORS 426.005(1)(f) (2015). Although the trial court used language consistent with the previous statute when it concluded that appellant was "not receiving such care as necessary for [her] health and safety," as opposed to the new statutory language, "not receiving such care as is necessary to avoid such harm," we assume that the trial court nevertheless analyzed the evidence under the amended statute, which became effective on January 1, 2016.

On appeal, appellant does not dispute that she has a mental disorder; rather, she asserts that the evidence was insufficient to support the trial court's determination that her mental disorder rendered her unable to provide for her basic needs. For instance, appellant argues that the record showed several examples of appellant caring for her basic needs: she took her medication; she was willing to continue taking her medication; she called police to obtain shelter and food; she had disability income and bought clothes when she needed; she had a plan to stay in a motel and then rent an apartment; she was willing to attend future appointments with ABH; and she was eating at the hospital. Further, appellant argues that there was no nexus between her mental disorder and the basic needs criteria. That is, witnesses did not, in appellant's view, describe how her mental disorder and its associated symptoms caused her to be unable to provide for her basic needs.

The trial court may involuntarily commit an individual if it determines by clear and convincing evidence that the person has a "mental illness" and is in need of treatment. ORS 426.130(1)(C). A person may not be civilly committed on the basis of a mental disorder alone. *State v. S. D. M.*, 198 Or App 153, 161, 107 P3d 683 (2005). Generally stated, a person has a mental illness for the purposes of the statutory framework for civil commitments if the person, because of a mental disorder, is a danger to self, danger to others, unable to provide for basic personal needs, or meets the expanded criteria for mental illness. ORS 426.005(1)(f). Specific to this case, a "person with a mental illness" is defined as "a person who, because of a mental disorder, is * * * [u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005 (1)(f)(B). For a basic-needs commitment, the state must prove a causal connection between appellant's mental disorder and her inability to provide for her basic needs. *State v. M. G.*, 147 Or App 187, 192, 935 P2d 1224 (1997).

In 2015, the legislature amended the "basic needs" definition of ORS 426.005(1)(f)(B). As we discussed in *State v. M. A. E.*, 299 Or App 231, 237, 448 P3d 656 (2019), the amended statute changed the "basic needs" commitment or

recommitment standard in two major ways.[3] First, where the old standard for commitment required a "risk of death," the standard under the 2015 amendment focuses on avoiding "serious physical harm." *Id*. at 238. Second, where the old statute required that the risk be "immediate" or "imminent," the amended statute permits commitment when the risk is "in the near future," even if that risk is not imminent or immediate. *Id*. at 240. Therefore, the amended statute altered both the type of risk and the timeframe in which that risk manifests itself, where the risk to appellant need not be imminent death, but rather, serious physical harm in the near future. We have further explained that "serious physical harm" is "a nonspeculative threat that the person will not safely survive without treatment." *State v. M. B.*, 300 Or App 522, 526, 452 P3d 1006 (2019).

In this case, viewing the facts in the light most favorable to the trial court's disposition, there was insufficient evidence that appellant faced serious physical harm in the near future. Although we separately discuss each risk that the trial court identified to support its determination, we are mindful that the record must be viewed as a whole to determine whether the evidence is sufficient to commit appellant. *See id*. at 527.

Regarding appellant's inability to obtain food, the record showed that appellant called police because she was hungry and was denied entry into the Mission. The record contained no evidence, however, that showed that appellant was malnourished, losing weight, or that there was a risk of any other serious physical harm in the near future as a result of her failure to obtain food. Indeed, even in *M. B.*, where the record showed that the appellant had psychosis and "had lost weight over an unspecified time period, lacked a current source of income, [and] was presently unable to obtain food stamps due to having lost her identification," we

---

[3] In *M. A. E.*, the appellant was challenging an order that continued her commitment to OHA for an additional period not to exceed 180 days after a hearing described in ORS 426.307 (outlining requirements for a recommitment hearing), whereas this case arose after an initial commitment hearing described in ORS 426.095 (outlining requirements for a commitment hearing). Both recommitment and commitment hearings, apply the same basic-needs standard under ORS 426.005(1)(f)(B).

reversed the appellant's commitment, concluding that the appellant's challenges in obtaining food had not yet reached the point of establishing a serious risk in the near future. *Id.* at 526-27. In this case, the evidence is even less established that appellant may suffer any serious physical harm from her inability to obtain food.

To the extent that the trial court found that appellant lacked insight and was disorganized, there is no evidence to tie this lack of insight to a risk of serious physical harm in the near future. At the hearing, appellant certainly was disruptive and made contradictory statements. On the other hand, appellant showed a certain level of insight when she recognized that she has bipolar disorder, articulated a coherent, if improbable, post-release plan, and asked police to bring her to the hospital when she was cold, hungry, and not allowed into the Mission.

With respect to appellant's houselessness, the trial court acknowledged, and we have repeatedly held that houselessness is not sufficient grounds for commitment. *Id.* at 528; *see also State v. L. B.*, 138 Or App 94, 99, 906 P2d 849 (1995) ("Although the lack of certain shelter is not a good plan, we cannot say that homelessness by itself is sufficient grounds for commitment."). Further, although it appears that the trial court discounted appellant's plan to rent a room at a motel and later rent an apartment, there was no additional evidence in the record to tie any lack of stable housing to a risk of serious physical harm in the near future.[4]

Finally, although Anderson testified that appellant was making "potentially life-threatening decisions and she's not able to make decisions to keep herself dry in cold weather," there is nothing in the record to determine what decisions were "life-threatening" and how those decisions created a risk of serious physical injury in the near future. For instance, although appellant was wet and cold, the record contained no evidence that appellant was at risk of hypothermia or other serious physical harm related to wet clothes and cold temperatures. Without more, Anderson's

---

[4] The record does not establish how much income appellant receives.

conclusory statements cannot provide sufficient evidence to support a basic-needs commitment. *See State v. M. C. D.*, 304 Or App 775, 783, 467 P3d 84 (2020) (reversing commitment where psychiatrist's testimony that he had concerns whether the appellant would survive without benefits or a place to live was insufficient without additional evidence); *see also M. A. E.*, 299 Or App at 241 (concluding that testimony that the appellant "may end up wandering the streets and having some very poor outcome" and that she could "come to serious harm" without more is not sufficient evidence of what "serious physical harm" the appellant would be unable to avoid in the near future).

As a whole and viewed in the light most favorable to the trial court's disposition, the record contained insufficient evidence that appellant's mental disorder made her unable to provide for her basic needs.

Reversed.