Argued and submitted August 4, 1994, reversed February 1, 1995

In the Matter of Nancy Whitman,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## NANCY WHITMAN,
*Appellant.*

(9311-97797; CA A82436)

889 P2d 372

Kirkland T. Roberts argued the cause and filed the brief for appellant.

John T. Bagg, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

## RIGGS, J.

Appellant appeals from an order finding her to be a mentally ill person and committing her to the Mental Health Division because she is a danger to herself and is unable to care for her basic needs. ORS 426.005(2)(b). We review *de novo, State v. O'Neill*, 274 Or 59, 545 P2d 97 (1976), to determine if there is clear and convincing evidence that appellant is mentally ill, ORS 426.130, and reverse the order of commitment.

Appellant, who is 47 years old, was taken to Portland Adventist Hospital by a police officer when she refused to leave a liquor store, complaining that the police and others were trying to kill her. In a precommitment examination report, examiner Skall reported that appellant was occasionally cooperative at the hospital, but that "for the most part she has not engaged in treatment." Medical charts indicate that appellant was hospitalized at Dammasch Hospital 27 years ago, but the examiner could not independently confirm that fact. The report notes that appellant receives Supplemental Security Income disability benefits. The examiner reports:

"Mental Status Exam * * *:   She appeared to be appropriately groomed. During each of the times I attempted to interview her she refused to cooperate and her mental status could not be assessed.

"Diagnostic Impression * * *:   Unknown.

"Evidence substantiating dangerous to self or others; inability to provide for basic needs * * *:

"[Appellant] could not tell me how she would care for her basic personal needs. She appears to suffer from a mental disorder and is in need of treatment, care and custody."

Examiner Beattie provided a report at the hearing. Beattie was of the opinion that appellant suffers from a mental disorder and that she is a danger to herself and unable to provide for her basic needs. As evidence of the mental disorder, Beattie reported:

"[Appellant] is withdrawn, nearly mute (except to say her name with repeated questions) — eyes are downcast.

"*Nexus* — No reason to believe this woman could care for self or keep self safe if discharged." (Emphasis in original.)

Examiner Mayer was also of the opinion that appellant suffers from a mental disorder and that she is unable to care for her basic needs. She reported:

"Very little information in the precommittment record and not cooperative to talk to her attorney. When questioned, she gave her first name but nothing else. Not cooperative to judge's or examiner's questions either. Not cooperative to investigator as well.

"Presumably the above non-cooperation is signal of mental illness. Unable to establish a history of care or the present ability to care for herself."

Appellant refused to answer the judge's or examiners' questions at the hearing, even after the judge warned:

The court: "[D]o you understand that by refusing to answer any questions that are presented to you, I can only infer that you are probably suffering from some kind of mental disorder and that you're either a danger to yourself or to others or unable to take care of your basic needs?"

Appellant: "(no response.)"

The court: "All right."

In our view, the evidence is not clear and convincing. To the contrary, the examiners' opinions are couched in speculation and uncertainty: "mental status could not be assessed"; "diagnostic impression: unknown"; "[Appellant] could not tell me"; "no reason to believe"; "very little information"; "presumably"; "unable to establish." The reports are simply not adequate.

In *State v. Alexander*, 26 Or App 943, 554 P2d 524 (1976), we stated what is required from the expert opinion:

"What is needed, then, is for the professional examiners to fully explain the facts and observations that led them to a conclusion. A statement by the examining doctors, as in the instant case, for example, that the person has a 'flat' appearance is meaningless without explanation. And, if the examiner merely states a conclusion that the person being tested is dangerous to himself or others, it is not adequate. The basis of that conclusion must be supported by facts supporting the conclusion.

"'* * * * *

"The lack of evidence supporting mental illness is further highlighted by the paucity of testimony that appellant is suffering from a mental disorder. One of the two examiners never stated, either in his testimony or in his examination report, what type of mental disorder appellant was suffering from. The other examiner did not testify as to the type of mental illness from which appellant suffered, but in his report he noted that appellant had 'prob. schizophrenia, paranoid type.' For emphasis we repeat that far more than these efforts are needed to apprise the court of the existence of a mental illness. The examiners must detail the basis for their findings. It is again emphasized that it is not enough to say that an individual is probably schizophrenic. In addition, the reasons for that judgment must be supplied. Further, the actual and possible effects of the mental illness should be catalogued, with specific reference to the individual at hand." 26 Or App at 948.

The examiners here undoubtedly did the best they could to conform to that standard with the information they had. Our concern, and the reason we reverse the order of commitment, is that there simply is not enough information about appellant to permit the findings necessary to order commitment. We recognize the difficulty of obtaining sufficient evidence to commit a person if that person refuses to speak. *See State v. Matthews*, 46 Or App 757, 763, 613 P2d 88, *rev den* 289 Or 588 (1980). The other evidence must, by necessity, be all the more persuasive. It is true that in a case such as this, where observation of demeanor is important, we give substantial weight to the trial court's findings based on its observations. *State v. Furnish*, 86 Or App 194, 198, 738 P2d 607 (1987). However, here, the trial court made no observations on the record. In Beattie's words, appellant sat withdrawn, "mute with eyes downcast." That, without more, is not sufficient evidence on which to find that appellant is dangerous to herself or unable to care for her basic needs.

Considered in its entirety, we find that the record does not contain enough information about appellant to establish, by clear and convincing evidence, that she is in need of commitment.

Reversed.