Argued and submitted February 23, reversed November 14, 2001

In the Matter of Kathleen Powell,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

KATHLEEN POWELL,
*Appellant.*

9909-67492; A107977

35 P3d 1084

Paul L. Breed argued the cause and filed the brief for appellant.

Kevin M. Hylton, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Appellant appeals from an order that committed her to the Mental Health Division for treatment. The order was based on a finding that appellant suffers from a mental disorder, presents a danger to herself, and is unable to provide for her basic personal needs. ORS 426.005(1)(d)(A), (B). Appellant contends that the court's findings are not supported by clear and convincing evidence as required by ORS 426.130. We agree and reverse.

Appellant's mental health probation officer telephoned appellant in September 1999 to schedule her for an office visit. During the conversation, appellant behaved erratically, prompting the probation officer to call back an hour later to speak with appellant's boyfriend. After speaking with the boyfriend, the probation officer asked the Gresham police to make a "welfare check" of appellant. Later that day, two Gresham police officers stopped to check on appellant at her residence, which was her boyfriend's parents' home. The officer who spoke with appellant testified that appellant's mood changed dramatically from one minute to the next as she spoke, shifting from upset and crying to openly hostile. Appellant told the officer that she heard voices, but she refused to say whether she was on any medication or wanted to hurt herself or others. The officer testified that, because she "didn't feel [that appellant] could care for herself" and she "didn't feel comfortable leaving her there," she decided to take appellant to the Crisis Triage Center. On the way to the center, appellant began hitting her head against a Plexiglas divider that separated the front and back seats of the patrol car. The officer testified that appellant hit the divider hard enough to make both officers jump. After several minutes of hitting the divider with her head and screaming garbled obscenities, appellant calmed down and became silent again. The center placed appellant on an emergency psychiatric hold, and the state commenced an involuntary commitment proceeding.

At the commitment hearing, appellant's mother testified that appellant had been hospitalized twice for mental

illness in the past three years. During the last hospitalization, in June 1998, appellant's young daughter was hospitalized for neglect, and appellant's mother and father were made guardians of the child.

After her release from the hospital, appellant moved into a house near her parents in Corvallis. In October 1998, appellant stopped taking her prescribed medication for her mental condition. In April 1999, appellant disappeared with her child. Appellant's parents located appellant and the child a month later at appellant's boyfriend's parents' home in Gresham. Appellant's parents left appellant in Gresham but took the child with them back to Corvallis. Since then, the only contact between appellant and her mother occurred in Albany in July 1999. The mother found appellant sitting on a street corner and attempted to engage her in a conversation, but appellant "was having difficulty at that time tracking." The mother also testified that appellant was "considerably thinner, [at] probably half the weight that she was the last time I saw her in Corvallis."

Appellant receives approximately $2,000 per month in spousal support from her former husband, and that income will continue for several years. She testified that, if she was released, her plan for the next seven days was to rent "some housing, a hotel room" and to order room service so that she could eat. No one asked appellant, nor did she explain, what her long-term plans might be. When asked whether she might hurt herself or someone else, she denied wanting to do either because it might jeopardize her plans to be reunited with her daughter.

Two mental health examiners concluded that appellant suffered from a "schizoaffective disorder," but they disagreed as to how that illness affected appellant. One examiner concluded that appellant was a danger to others because she was "extremely labile in her mood" and was "unable to control her affect and behavior." The other examiner determined that appellant was a danger to herself and was unable to provide for her basic personal needs. The second examiner stated that appellant was not "directly dangerous to self but

will place herself in harm[']s way," and that without medication she would be "unable to care for her basic needs because of her cyclical behavior[;] * * * she will cycle and resist help."

Appellant was disruptive throughout the proceeding. The trial court described appellant's courtroom behavior as "erratic, abrupt, extremely distracted, hostile, inappropriately so, very labile." At the conclusion of the proceeding, a brief colloquy occurred between the court and appellant:

"THE COURT:   And the state of disorganization that she has today is at such a level that the Court does believe that [appellant,] if released, would be unable to provide for her basic personal needs, although she does have money and does have some ability to state—

"[APPELLANT]:   How do you think I couldn't supply my needs in the next week until I get an apartment?

"THE COURT:   And certainly there is—

"[APPELLANT]:   You don't think I know how to get here to there?

"THE COURT:   Erratic behavior which the Court believes would place her in harm's way. I do not believe that she can function on the streets. The Court believes that she is at such a level—

"[APPELLANT]:   I'm not functioning on the streets.

"THE COURT:   —of being unable to control her behavior that if released that it would be highly probable that she would be facing great physical danger to herself.

"So the Court is going to find that there's clear and convincing evidence that [appellant] is dangerous to herself and is unable to provide for her basic personal needs, and is not receiving the care that's necessary for health or safety."

The court concluded that appellant was unwilling, unable, or unlikely to participate in a voluntary treatment program and ordered her committed to the custody of the Mental Health Division for a period not to exceed 180 days.

On appeal, appellant contends that the trial court erred in committing her because the state did not establish by clear and convincing evidence that she presents a danger

to herself or is unable to provide for her basic personal needs. We agree.

■   We first consider whether the state established that appellant is a danger to herself. The state argues that appellant's weight loss, inability to control herself, and head-battering incident in the police car "demonstrate an inclination to engage in dangerous behavior" as a result of her illness. Although the weight loss and the incident in the police car may suggest an inclination by appellant to engage in behavior that conceivably could harm her, we are not persuaded that the evidence meets the standard for civil commitment. There is no evidence that appellant's poor judgment and lack of self-control have resulted in harm, so we are left to speculate about how her condition might lead her to harm herself in the future. However, "[a]pprehensions and speculations alone are not enough to find a person in need of treatment." *State v. Stanley*, 117 Or App 327, 330, 843 P2d 1018 (1992). We therefore conclude that the state did not establish by clear and convincing evidence that appellant's condition made her dangerous to herself.

We next consider whether the state established that appellant was unable to provide for her basic personal needs. We explained in *State v. Bunting*, 112 Or App 143, 145-46, 826 P2d 1060 (1992), that

"[t]he legislature's 'basic needs' commitment standard focuses on the capacity of the individual to survive, either through [her] own resources or with the help of family or friends.

"* * * * *

"* * * A person is subject to a 'basic needs' commitment under ORS [426.005(1)(d)(B)] if clear and convincing evidence demonstrates that, due to a mental disorder, there is a *likelihood that the person probably would not survive in the near future* because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety."

(Emphasis added.)

■     Nothing in this record establishes a likelihood that appellant will not survive in the near future. Appellant had survived for nearly 11 months without her medication and for four months without her family's help. Although appellant's mother testified that appellant had lost weight since leaving Corvallis, there is no evidence that the weight loss resulted from appellant's mental disorder or that it had affected her health. *See State v. Sea*, 137 Or App 333, 904 P2d 182 (1995) (appellant who was reluctant to go to grocery store and had lost ten pounds should not have been committed based on inability to meet basic needs because there was no evidence that weight loss had affected her health). Furthermore, there is no evidence that appellant's condition had significantly deteriorated since her encounter with her mother in July 1999. Thus, we find that appellant has adequately provided for her basic needs up to this point, and the only question is whether the state presented clear and convincing evidence that she will be unable to do so in the future.

Appellant has more than adequate financial resources to provide for her basic needs. She receives $2,000 per month in spousal support and will continue to receive that support for the next three years. Appellant testified that she planned to use that money to rent a hotel room and to order room service for the next seven days. The state argues that that "plan" is too transient and unrealistic to support a finding that she will be able to provide for her basic needs. We disagree. Admittedly, appellant's plan may address only her basic needs for the next week, but appellant's testimony as a whole indicates that she knew that she had money and that she had to use that money to meet her basic needs, that is, food and shelter.[1] While there is little doubt that appellant is delusional, "[c]ivil commitment is not a paternalistic vehicle for 'saving people from themselves.' " *State v. White,* 155 Or App 288, 294, 963 P2d 107 (1998) (quoting *State v. Gjerde,* 147 Or App 187, 196, 935 P2d 1224 (1997)). The state failed to prove by clear and convincing evidence that appellant would

---

[1] When the trial court made its finding that she was unable to provide for her basic needs, appellant interjected: "How do you think I couldn't supply my needs in the next week until I get an apartment."

not survive in the near future. We therefore conclude that the state failed to establish that appellant was unable to provide for her basic personal needs.

Reversed.