Argued and submitted January 20, reversed March 9, 2011

In the Matter of D. A. H.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

D. A. H.,
*Appellant.*

Lane County Circuit Court
300911339; A142349

250 P3d 423

James A. Palmer argued the cause and filed the brief for appellant.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Appellant seeks reversal of a judgment of involuntary civil commitment, contending that the state failed to prove by clear and convincing evidence that she was mentally ill under ORS 426.130(1)(b)(C) and ORS 426.005(1)(e). Appellant argues that there was insufficient evidence that she suffered from a mental disorder and that the alleged mental disorder caused her to be a danger to herself or others. On *de novo* review,[1] *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), we reverse.

Appellant had separated from her husband in the weeks preceding her hospitalization. The husband testified that she had been acting erratically and experiencing spontaneous crying episodes. Although she had visited a general practitioner and was prescribed Paxil, her behavior did not change. Appellant went to stay with her father, but shortly thereafter left and apparently checked into a motel. She then filed a restraining order against her husband (which was later dismissed).

Two days before appellant was hospitalized, while her husband was asleep at home, appellant drove her car across the lawn and into a brick planter, causing the planter to hit the house. Her husband was roused by the noise of the collision, and, when he got to the window, he saw appellant driving away. He reported the incident to the police.

Sometime later that day, appellant was pulled over by the police. When the officer knocked on appellant's car window, she was unresponsive and stared straight ahead. After the officer opened the car door and asked if she was okay, appellant became agitated and yelled at the officer. The officer testified that appellant seemed "a little detached," that she was emotionally labile, and that she was generally uncooperative in answering his questions. Although appellant initially denied running her car into the planter, the officer testified that she ultimately confessed. The police took

---

[1] This appeal was filed before June 4, 2009, the effective date of Oregon Laws 2009, chapter 231. That law, which amends ORS 19.415, changed the *de novo* standard of review for equitable proceedings that we have applied in review of civil commitment cases.

her into custody for a short time and, upon release, her father admitted her to the hospital.

At the commitment hearing, appellant's treating psychiatrist diagnosed her with a "mood disorder not otherwise specified" based upon her "difficulty with sleep," "irritability of mood, [and] affective lability." Although he "believe[d]" appellant had bipolar disorder, he did not "have enough information to fully make the diagnosis." The psychiatrist also testified that appellant had not been amenable to medication, denied having a mental disorder, and had not expressed any desire to harm herself or others. The psychiatrist nonetheless opined, without elaboration, that appellant was a danger to herself and others.

No evidence was presented that appellant had a history of a previously diagnosed mental disorder. Appellant's husband, however, testified that she had engaged in similar behavior three and a half years prior. During that "episode," appellant hit a sliding glass door with a shovel in an unsuccessful attempt to gain access to the house. Although she had pushed her husband "a couple of times" before, he had never felt threatened by her behavior, and appellant has no reported history of harming herself or others.

No evidence was introduced showing appellant's mental condition at the time of the hearing. However, the examiner's report[2] notes that her "mood was stable and her affect was guarded and somewhat paranoid." In addition, the report states that appellant's thought process was not loose or tangential and that she "was oriented to person, place and time." Appellant's testimony was brief and unrevealing: she denied having a mental illness, denied having any desire to harm herself or others, and asserted that driving her car into the planter was an accident.

After hearing the evidence, the trial court found that, because of a mental disorder, appellant was a danger to herself and others and committed her to the Oregon Health Authority for a period not to exceed 180 days.[3] The court did

---

[2] The examiner did not testify but his report was made part of the record.

[3] It is unclear whether the trial court intended to commit appellant on the additional ground that she was "[u]nable to provide for basic personal needs and is

not explain the basis for its decision or cite the evidence on which it relied.

On appeal, appellant first contends that the evidence of her alleged mental disorder was "vague and equivocal" and therefore could not form the basis of a conclusion that her purported dangerousness was caused by a mental disorder. Instead, she argues that her behavior was the product of marital discord and the stress of separation. Second, she contends that there was no evidence that she presented a threat, much less an ongoing threat, of harm to herself or others. Because there was not clear and convincing evidence that appellant was a danger to herself or others, or that her allegedly dangerous behavior was caused by a mental disorder, we reverse.

Appellant may be involuntarily committed only if the state proves by clear and convincing evidence that she has a mental disorder that causes her to be a danger to herself or others.[4] ORS 426.130(1)(b)(C); ORS 426.005(1)(e)(A). The " 'clear and convincing evidence' standard of proof requires that the state produce evidence that is of 'extraordinary persuasiveness' and that makes the facts at issue 'highly probable.' " *State v. A. M.-M.*, 236 Or App 598, 603, 238 P3d 407 (2010) (citation omitted). We assess the evidence under that standard "based on appellant's condition at the time of the hearing as understood in the context of her past behavior." *State v. D. R.*, 239 Or App 576, 583, 244 P3d 916 (2010).

We begin by assessing whether appellant is a danger to herself. In order to commit appellant on that ground, "the state must prove that appellant's mental disorder has resulted in harm to herself or has created situations likely to result in harm. The threat of harm need not be immediate, but it must be real and exist in the near future." *Id.* (citation omitted).

---

not receiving such care as is necessary for health or safety." ORS 426.005(1)(e)(B). The trial judge, apparently misapprehending the requirements of a "basic needs" commitment, held that appellant "is able to provide for her basic personal needs * * * but is not receiving such care as is necessary for her health or safety without our intervention." Nonetheless, the state concedes that the record does not support an order of commitment on that ground. We accept the concession.

[4] A person may be committed on other grounds not relevant to this appeal.

Here, there is no evidence of any actual harm to appellant. Indeed, the only potential threat of harm occurred when she drove her car into the brick planter. Even if we discount appellant's testimony that that event was an accident, it seems at most to be an impulsive act or a misdirected expression of frustration. There is no evidence that she was in danger of substantial physical harm or that her actions resulted in anything more than the destruction of property. *See State v. B. B.*, 240 Or App 75, 82-83, 245 P3d 697 (2010) (explaining that the threat of physical harm must be serious and that many cases suggest the potential harm must be life threatening). Nor does that isolated event establish a highly probable threat to her safety in the near future. *See id.* at 84 (requisite danger to self "must partake of a 'particularized' and 'highly probable' threat to appellant's safe survival, including a risk of substantial harm, in the near future" (citations omitted)); *State v. Powell*, 178 Or App 89, 94, 35 P3d 1084 (2001) ("There is no evidence that appellant's poor judgment and lack of self-control have resulted in harm, so we are left to speculate about how her condition might lead her to harm herself in the future.").

Furthermore, there is no evidence that, at the time of the hearing, appellant had any desire to harm herself. Appellant's mood was "stable" and she was responsive to questioning, if somewhat guarded. The bare conclusion of the psychiatrist (and the examiner in his report) that appellant was a danger to herself is insufficient to establish the requisite threat of harm and, in the absence of factual support, is nothing more than speculation. *See State v. Allen*, 209 Or App 647, 653, 149 P3d 289 (2006) (bare conclusion of examiner is insufficient to support commitment). Thus, there was scant evidence, let alone clear and convincing evidence, that appellant was a danger to herself.

■■ For similar reasons, the evidence is insufficient to establish that appellant is a danger to others. "[A] mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person." *State v. Lucas*, 31 Or App 947, 950, 571 P2d 1275 (1977). Here, the acts of appellant included hitting a shovel against a door three and a half years prior to the

hearing, pushing her husband "a couple of times," and driving her car into a brick planter outside her husband's home. Those acts do not demonstrate a clear risk of future violence.

First, there was no evidence that appellant's act of driving her car into the brick planter was intended to harm her husband or that he (or anybody else) was likely to be harmed. Second, the act of pushing her husband at some unspecified time in the past in some unknown context cannot support commitment. *See Allen*, 209 Or App at 653 (where the record reflected that the appellant pushed someone, but contained no details about the circumstances of the incident, the evidence "hardly establishe[d] a foundation for a prediction of future dangerousness"). That is especially true in light of her husband's testimony that he did not feel threatened at any time by appellant and that she had not made any verbal threats. Finally, no evidence suggested that appellant's act of hitting a door with a shovel to gain entry to the house presented any risk to her husband or anyone else.

Although past behavior provides necessary context to a finding of dangerousness, the focus of our assessment is appellant's condition at the time of the hearing. *Lucas*, 31 Or App at 950. Here, appellant's mood was stable at the time of the hearing, and she testified that she had no desire to harm others. There were no facts presented to contradict her assertion—only the bare conclusions of the psychiatrist and examiner. Moreover, there was no testimony about how her condition at the time of the hearing related to her prior acts or how it formed the basis for a prediction of future dangerousness. In the absence of such evidence, we cannot conclude that appellant is a danger to others.

■ The state's position is further undermined by the lack of evidence that appellant's allegedly dangerous actions were caused by a mental disorder. In order to commit appellant, there must be a causal connection between her alleged mental disorder and her allegedly dangerous behavior. *State v. Webber*, 181 Or App 229, 236-39, 45 P3d 1046 (2002) (although the appellant had a mental disorder and had engaged in dangerous activity, the record did not support commitment where the appellant's actions could as reasonably be the result of other causes); *State v. Gjerde*, 147 Or App

187, 192, 935 P2d 1224 (1997) (testimony of state's witnesses failed to link the appellant's actions to her alleged mental disorder).

We need not determine whether appellant suffered from a mental disorder because, even assuming that she has a mental disorder, the record is insufficient to show that the disorder caused appellant's allegedly dangerous behavior. At the hearing, the psychiatrist did not explain how appellant's actions were linked to her mental disorder. Nor did the examiner, in his report, connect her mental disorder to her allegedly dangerous behavior. Indeed, there is little evidence about the features of appellant's mental disorder, let alone whether the disorder caused her to act as she did. The psychiatrist identified only three symptoms: difficulty with sleep, irritability of mood, and affective lability. Although we could infer that appellant's behavior was caused by her mental disorder, it is equally plausible that her behavior was the product of distressing circumstances in her personal life. It is not atypical for a certain amount of rancor to accompany a marital separation. *See Webber*, 181 Or App at 237 (causal nexus was not established where the inference that the appellant's behavior was caused by his mental illness was "equaled or outweighed by the reasonable inference that" the appellant's conduct was caused by something else). In short, there is not clear and convincing evidence that appellant's mental disorder, if any, caused her to engage in the allegedly dangerous behavior.

Reversed.