Submitted July 23, 2012, reversed August 14, 2013

In the Matter of A. D. S.,
Alleged to be a Mentally Ill Person.
STATE OF OREGON,
*Respondent,*

*v.*

A. D. S.,
*Appellant.*

Multnomah County Circuit Court
100363574; A145406

308 P3d 365

Rebecca Carter filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Appellant seeks reversal of a judgment of involuntary civil commitment under ORS 426.130, arguing that the record does not establish by clear and convincing evidence that, because of a mental disorder, she is unable to provide for her basic needs and is not receiving such care as is necessary for health or safety, ORS 426.005(1)(e)(B). We conclude that the evidence is legally insufficient to support the trial court's conclusion and, accordingly, reverse.

Whether the evidence presented by the state is legally sufficient to support a civil commitment is a question of law. *State v. D. M.*, 245 Or App 466, 468, 263 P3d 1086 (2011). Neither party requested *de novo* review, and our review of the record does not demonstrate that this case is an exception to the general rule. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c) (allowing *de novo* review only in exceptional cases). Accordingly, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013) (stating our standard of review for the legal sufficiency of evidence when we decline *de novo* review of the facts, in the context of a juvenile court's determination of jurisdiction under ORS 419B.100(1)(c)). We are bound by the trial court's findings of fact that are supported by evidence in the record. ORS 19.415(3)(b); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

Since March 2010, appellant had been receiving intensive out-patient services from Central City Concern's Community Outreach Recovery Engagement team (CORE), including provisions of food and clothing. She was placed on a waiting list for a local shelter. She received food stamps and a monthly Social Security stipend for nearly seven hundred dollars, for which she used "Safety Net" as her payee.

On March 30, 2010, appellant was taken to the hospital by CORE staff members and placed on a mental

health hold after an incident in which she stayed for "quite some time" in the shower at a CORE office, exhibited loud and erratic behavior—talking with an internal person she referred to as her husband, yelling, and pounding what presumably was the removable showerhead, and was unresponsive to caseworkers' requests to exit the shower. Appellant subsequently agreed to a two-week voluntary stay at the hospital, where she voluntarily took her medication and ate "fairly well" but was too disorganized to make a discharge plan. She also was observed screaming in her room by a nurse who believed that appellant was bothered by the voices in her head.

At the time of the commitment hearing, on April 15, 2010, appellant was 29 years of age, diagnosed with schizophrenia, and had spent most of the last 12 years in a structured mental health facility. She was asked to leave the most recent facility due to a relapse in her drug addiction after she used a small amount of medical marijuana and methamphetamine. Appellant had limited money management and daily living skills, presented herself in a sexually "provocative" manner, and both heard and responded to internal voices. She was not interested in any mental health medication or counseling.

At the commitment hearing, appellant's father told the court that he believed appellant heard voices all the time. Two examiners testified that appellant suffered from schizophrenia and was unable to provide for her basic needs. Appellant stated that she believed CORE could help her meet her needs and that she had a support network of friends, family, and members of her church. She identified a number of places she may be able to stay if she were released. CORE staff affirmed that they would continue to help and provide services for appellant and would help her to find immediate shelter if she were released.

The trial court found by clear and convincing evidence that appellant suffered from a mental disorder and was unable to provide for basic personal needs and was not receiving such care as is necessary for health and safety. The court further determined that appellant was unwilling,

unable, or unlikely to participate in treatment on a voluntary basis, and that a conditional release was either unavailable or not in appellant's best interest.

On appeal, appellant assigns error to the trial court's determination that she could not provide for her basic needs, arguing that there was insufficient evidence to show that she was unable to obtain some service or commodity necessary to sustain her life.

ORS 426.130(1)(b)(C) provides that, if the court determines after a commitment hearing that, based on clear and convincing evidence, a person is mentally ill, then the court may order commitment of the individual to the Oregon Health Authority for treatment. ORS 426.005(1)(e) defines "mentally ill" as

"a person who, because of a mental disorder, is one or more of the following:

"(A)   Dangerous to self or others.

"(B)   Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

Thus, "ORS 426.005 precludes a court from committing a person on the basis of a mental disorder alone." *State v. S. D. M.*, 198 Or App 153, 161, 107 P3d 683 (2005).

The clear and convincing evidence standard imposes a "heavy burden" on the state that is "the product of a fundamental recognition of the priority of preserving personal liberties." *State v. R. A.*, 209 Or App 647, 652, 149 P3d 289 (2006) (internal quotation marks omitted). It requires the state to "produce evidence that is of extraordinary persuasiveness and that makes the facts at issue highly probable." *State v. D. A. H.*, 241 Or App 391, 395, 250 P3d 423 (2011) (internal quotation marks omitted). We consider the evidence in the record under that standard to determine whether it was legally sufficient to support the trial court's conclusion that appellant was unable to provide for her basic personal needs and was not receiving the care necessary for health or safety. *Id.* ORS 426.005(1)(e)(B).

"Basic needs [in the context of involuntary commitment] are those things necessary to sustain life." *State v. Herdan*, 129 Or App 24, 26, 882 P2d 605 (1994). "A person is subject to a 'basic needs' commitment under [what is now ORS 26.005(1)(e)(B)] if clear and convincing evidence demonstrates that, due to a mental disorder, there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety." *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992); *see also R. A.*, 209 Or App at 654-55; *S. D. M.*, 198 Or App at 159-60. In *Bunting*, we explained:

> "The legislature's 'basic needs' commitment standard focuses on the capacity of the individual to survive, either through his own resources or with the help of family or friends. The state must establish by clear and convincing evidence that the individual, due to a mental disorder, is unable to obtain some commodity (*e.g.*, food and water) or service (*e.g.*, life-saving medical care) without which he cannot sustain life. The statute does not express a standard by which the imminence of the threat is to be measured."

*Bunting*, 112 Or App at 145.

A mental commitment order cannot be based on apprehensions, speculations, and conjecture that an appellant cannot care for her basic needs. *S. D. M.*, 198 Or App at 160. For example, speculation that a person may fail to take prescribed medication is not, by itself, sufficient to demonstrate an imminent threat to survival. *Bunting*, 112 Or App at 145. Likewise, "[i]n circumstances where an alleged mentally ill person lacks the ability to provide for basic needs, but family or friends are available to assist the person, we have determined that commitment is not justified." *Herdan*, 129 Or App at 27; *see also State v. Johnson*, 131 Or App 561, 566-67, 886 P2d 42 (1994) ("Appellant's basic needs may be met through his own resources or with the help of family or friends. Commitment is not justified if family or friends are available to assist." (Citations omitted.)).

Here, there is evidence that appellant had a regular source of income from Social Security, food stamps, and the support of the CORE program and others to help her meet

her needs for food, clothing, shelter, and medical care. Thus, the record lacks any evidence that appellant's mental disorder placed her at risk of death in the near future or that she lacked access to services to assist her in providing for her basic needs.

Reversed.