Argued and submitted August 29, reversed December 26, 2013

In the Matter of the Conservatorship
of Walter F. Brown, Incapacitated Person.

Walter F. BROWN
and Beverly L. Brown,
*Appellants,*

*v.*

MacDONALD AND ASSOCIATES, LLC,
interim Successor Conservator;
Jeffrey D. Brown, former Conservator;
and David W. Brown,
*Respondents.*

Clackamas County Circuit Court
P0707042; A145659

317 P3d 301

Margaret H. Leek Leiberan argued the cause for appellant Beverly L. Brown. With her on the briefs was Jensen & Leiberan. Appellant Walter F. Brown joined the opening brief *pro se*.

Ridgway K. Foley, Jr., argued the cause for respondents. With him on the answering brief were Gary M. St. Louis, Penny L. Davis, and Green & Markley, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Walter Brown, a protected person, seeks reversal of the probate court's denial of his motion to terminate a conservatorship established under ORS 125.010.[1] In 2007, the probate court established the conservatorship after concluding that Brown was financially incapable under ORS 125.400. In 2010, Brown filed a motion to terminate the protective proceeding under ORS 125.090(1), contending that he was no longer financially incapable. He now challenges the denial of that motion, asserting four assignments of error. Because we conclude that the record was legally insufficient to support the probate court's conclusion that Brown continues to be financially incapable, we reverse, and do not address Brown's other assignments of error.

We begin with an overview of the relevant statutes. Pursuant to ORS 125.400, the probate court may appoint a conservator if the court finds by clear and convincing evidence that the respondent is "financially incapable." Once a conservatorship is established, the protected person may move to terminate it under ORS 125.090(1), which provides:

> "A protected person is entitled to the same rights and procedures provided in the original proceedings when a motion to terminate the protective proceeding is filed and a fiduciary opposes the motion. *The fiduciary has the burden of proving by clear and convincing evidence that a protected person continues to be incapacitated or financially incapable* if a motion to terminate a protective proceeding is filed and the fiduciary opposes the motion."

(Emphasis added.) ORS 125.005(3) provides the following definition:

> "'Financially incapable' means a condition in which a person is unable to manage financial resources of the person effectively for reasons including, but not limited to, mental illness, mental retardation, physical illness or disability, chronic use of drugs or controlled substances, chronic intoxication, confinement, detention by a foreign power or

---

[1] Brown and his wife Beverly Brown both brought that motion and are coappellants in this appeal; Brown appeared *pro se* and adopted Beverly's brief as his own. For simplicity's sake, we generally refer to Brown as the person asserting arguments on appeal and refer to Beverly Brown and other members of Brown's family by their first names.

disappearance. 'Manage financial resources' means those actions necessary to obtain, administer and dispose of real and personal property, intangible property, business property, benefits and income."

Neither party has requested *de novo* review and the case does not appear to warrant it. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c) (stating that we exercise *de novo* review only in "exceptional cases"). Accordingly, as in other equitable proceedings, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013) (stating our standard of review in juvenile dependency cases). "We are bound by the trial court's findings of fact that are supported by evidence in the record." *State v. A. D. S.*, 258 Or App 44, 45, 308 P3d 365 (2013) (citing ORS 19.415(3)(b)).

We state the following facts consistently with our standard of review and supplement with procedural facts as needed. Brown is an elderly gentleman. In 2006, Brown's son, Jeffrey Brown, helped Brown obtain a protective order against his second wife (now ex-wife) and began to assist Brown with his finances. Brown had failed to pay $100,000 in federal and state taxes between 2000 and 2006 and also owed about $110,000 on his credit cards, debts which Jeffrey assisted him in paying off. Brown accumulated significant additional debts during that time period.

In 2007, Brown married his third wife, Beverly. Jeffrey became concerned when he discovered that Beverly had a criminal record which included convictions for fraud, larceny, kidnapping, and identity theft, and ultimately filed a petition for conservatorship. Immediately after the original petition was filed, Brown deeded a large plot of land, worth about $800,000, to Lincoln County; that gift is a matter of continuing dispute between Brown and Jeffrey.

At the 2007 conservatorship hearing, the court heard evidence of Brown's financial situation, and also received into evidence a letter from Dr. Blanchard, Brown's primary care physician, stating that Brown showed "signs of loss of

memory and reasoning ability that may be either a result of senile dementia or developing Alzheimer's." Blanchard's letter further explained that Brown suffered "from a number of challenging physical and mental issues during [2000 to 2006], any number of which would have contributed to the indicated deterioration in his ability to manage his financial affairs."

In December 2007, the court found Brown to be financially incapable and appointed Jeffrey as financial conservator. The judge explained,

> "The evidence shows that [Brown] has a degree of intelligence and understanding. However, it is clear that his finances are in shambles. * * * It is clear that [Brown] has * * * vigorously repelled the good faith efforts of his sons to assist him and to help bring order out of the chaos of his finances. This is apparently due to his relationship with and recent marriage to [Beverly], who has a long criminal record * * *. There is no evidence of recent misconduct by her, but [Brown's] sons are understandably concerned * * *."

On appeal, this court affirmed without opinion. *Brown v. Brown*, 233 Or App 227, 224 P3d 708 (2009).

Brown resisted the conservatorship in various ways over the next two years. For example, during the first eight months, Brown continued to receive his income directly and he "[p]aid some" of his bills. After Jeffrey became the payee for Brown's Social Security checks, Brown went to the Social Security office and asked to receive his checks directly; a hearing, held without notice to Jeffrey, resulted in a determination that Brown would again receive the checks. In addition, Brown filed his 2007 and 2008 taxes with the help of a tax professional after refusing to let Jeffrey file them. In 2009, Brown refused to let Jeffrey make his spousal support payments, insisting that he would make them himself, though he failed to make the payments for about four months. In addition, Brown cashed out several life insurance policies without notifying Jeffrey; he had borrowed heavily against the policies, resulting in little return and incurring a large tax liability.

In January 2010, the probate court appointed MacDonald & Associates as interim conservator to replace

Jeffrey. The following month, Beverly filed a motion to terminate the conservatorship under ORS 125.090(1) on the ground that Brown was not financially incapable; Brown joined in that motion, appearing *pro se*. Jeffrey and his brother David Brown opposed that motion. During the subsequent hearing in April 2010, the court heard evidence of Brown's actions before the original 2007 judgment, as well as evidence of his behavior after the conservatorship began. Jeffrey and David's evidence consisted of testimony from Jeffrey, Nancy MacDonald of MacDonald & Associates, and some excerpts of a deposition of Brown from April 2009.

Jeffrey, who had not had any contact with Brown for at least a year, testified primarily about what had occurred before establishment of the conservatorship in 2007 and explained that he was opposing its termination "[b]ecause I have not seen any evidence that anything has changed in terms of my father's ability to take a long-term view of how he can provide for himself and manage his affairs and expenses." In addition, he stated that Beverly is a potential threat to Brown's well-being and that he is concerned that Brown may be "easily abused."

MacDonald testified about her interactions with Brown since becoming interim conservator. She explained that Brown could articulate what his income and income sources are, but she saw some discrepancies in his estimates of net income. She stated that Brown had suggested a budget that "far exceeds [his] income by thousands" and that she did not "see a way to meet [Brown's] desired financial needs on the current income and resources." In addition, MacDonald noted that Brown was "pressing to get more money" and "demanded the deposit of funds into his account" but refused to go to her office to discuss such matters. In her testimony, she suggested that some of Brown's ideas for handling his debts seemed, to her, to reflect a poor understanding of his realistic options.

At the close of Jeffrey and David's evidence, Brown sought a directed verdict, arguing that they had failed to present clear and convincing evidence that he continues to be financially incapable as required by ORS 125.090. After the court denied that motion, Brown testified on his own

behalf and also presented testimony from his certified public accountant, three doctors, several of his acquaintances, and Beverly.

All three doctors testified that Brown is completely capable of managing his financial affairs. Dr. Maron, a neuropsychologist, had a two-hour meeting with Brown a few days before the hearing; in addition to discussing the case, she assessed Brown using a "dementia rating scale" on which Brown scored the same as he had in 2007. She explained that she had believed Brown to be competent in 2007 and had testified to that effect during the original proceedings. She also testified that Brown "seems to understand the past errors he made in the financial domain. He has good insight into them and seems to have taken appropriate steps to try to correct them." She concluded that "he is perfectly capable of managing his finances." Dr. Blanchard, Brown's primary care physician, who had written the letter expressing concerns about Brown's competence in the first hearing, testified that, based on his latest examination of Brown in the fall of 2009, he did not believe that Brown has dementia. He opined that Brown had shown insight into his financial issues and that, "[f]rom a medical and psychological standpoint he is absolutely capable of handling his finances." Finally, Dr. Rountree, a psychologist who had seen Brown about once a week since October 2007, testified that Brown is "completely capable of handling his own financial affairs."

Brown's CPA, James McDonald, testified that Brown appeared to be living within his means and had a lot of financial security. McDonald also explained that the tax consequences of donating the property to Lincoln County were actually favorable to Brown. Brown also testified about why he had been unwilling to provide certain documents to MacDonald—generally, because he viewed the documents as relating to matters not within her job description.

In a letter opinion, the probate court denied Brown's motion to terminate the conservatorship, finding that he remained financially incapable:

> "The Court finds from the record * * * and in the history of this case that nothing of consequence has changed in the circumstances that gave rise to the prior order of

Conservatorship and the affirmation of that Order in the Court of Appeals.

"The Court does not find that it is in the best interest of [Brown] that the Conservatorship be vacated.

"The prior finding that Mr. Brown is at considerable risk of exploitation is strongly supported. The Court is concerned by the history of financial negligence on Mr. Brown's part, and his unwillingness during the pendency of his request to terminate the Conservatorship to cooperate with qualified persons to assist him in reasserting his right to manage his own affairs.

"The Court is mindful of Mr. Brown's level of distress over his loss of autonomy; that, in itself, is not a sufficient basis for ending this Conservatorship."

On appeal, we address whether the court erred in concluding that the fiduciary proved by clear and convincing evidence that Brown continued to be financially incapable. Brown contends that the court erred by relying on the prior order of conservatorship and its affirmance by this court. He argues that the only issue should have been whether he was *currently* incapable of handling his own finances and that, consequently, neither his "alleged 'history of financial negligence'" nor his lack of cooperation with the conservatorship was relevant. In response, Jeffrey and David argue that plenty of current evidence supports the trial court's ruling, and that the medical testimony is mostly unhelpful and irrelevant because "financial incapacity is not necessarily limited to medical conditions such as dementia ＊＊＊." We conclude that the record is legally insufficient to support the probate court's ruling.

ORS 125.090(1) provides that a fiduciary who opposes a motion to terminate a conservatorship must prove by clear and convincing evidence that the protected party continues to be financially incapable. That rigorous standard is "the product of a fundamental recognition of the priority of preserving personal liberties." *State v. Allen*, 209 Or App 647, 652, 149 P3d 289 (2006) (internal quotation marks and citations omitted) (explaining that the clear and convincing standard imposes a "heavy burden" on the state in the context of civil commitment cases). The fiduciary must

produce evidence that is of "extraordinary persuasiveness" to meet the standard. *State v. D. M.*, 245 Or App 466, 470, 263 P3d 1086 (2011) (discussing the clear and convincing evidence standard in the context of a civil commitment).

Returning to the statutory definition, "financially incapable" means

> "a condition in which a person is unable to manage financial resources of the person effectively for reasons including, but not limited to, mental illness, mental retardation, physical illness or disability, chronic use of drugs or controlled substances, chronic intoxication, confinement, detention by a foreign power or disappearance. 'Manage financial resources' means those actions necessary to obtain, administer and dispose of real and personal property, intangible property, business property, benefits and income."

ORS 125.005(3). Accordingly, the statute requires the court to determine whether a person is "unable to manage [his] financial resources * * * effectively" for reasons related to the person's legal capacity. That is, all of the examples of incapacity in the statutory definition relate either to mental ability (mental illness, mental retardation, chronic intoxication) or physical circumstances (confinement, detention, or disappearance).

Here, the court concluded that Brown was financially incapable based on findings that he was at risk of exploitation, had negligently managed his finances in the past, and failed to cooperate with his conservator. The court, however, did not explicitly find that those concerns were caused by Brown's lack of capacity. Instead, the court found that its "prior finding that [Brown] is at considerable risk of exploitation" is "strongly supported" and expressed "concern" about his "history of financial negligence" and his "unwillingness to cooperate with qualified persons." Those findings standing alone, without evidence that they were the result of a lack of capacity, do not support the determination of financial incapability under ORS 125.005(3). Moreover, the record contains no evidence—let alone clear and convincing evidence—that Brown was "unable to manage [his] financial resources * * * effectively" at the time of the hearing because he lacked legal capacity. Indeed, the

only evidence relating to capacity indicated that Brown's doctors concluded that Brown had the capacity to manage his financial resources, that is—"those actions necessary to obtain, administer and dispose of real and personal property, intangible property, business property, benefits and income." In sum, mere evidence that a person was at risk of exploitation or had made bad fiancial decisions does not support a determination that a person is "financially incapable" unless there is also evidence that the risk of exploitation or bad financial management was caused by the person's lack of capacity.

Lacking clear and convincing evidence that Brown continues to be financially incapable within the meaning of ORS 125.005(3), the probate court erred in denying his motion to terminate the conservatorship.

Reversed.