668 March 11, 2026 No. 184

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. M.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

S. M.,
*Appellant.*

Multnomah County Circuit Court
25CC01818; A187353

Jane W. Fox, Judge.

Submitted February 19, 2026.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Kyleigh Gray, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

LAGESEN, C. J.

Reversed.

**LAGESEN, C. J.**

Appellant appeals a judgment civilly committing him to the custody of the Oregon Health Authority on the ground that he has a mental disorder that makes him dangerous to himself.[1] He assigns error to the trial court's determination that the standard for a civil commitment is satisfied, challenging the sufficiency of the evidence to support it. We conclude that the evidence is legally insufficient to support the determination that appellant is a danger to himself and therefore we reverse.[2]

Neither party requests *de novo* review and, as this is not an "exceptional case[ ]," we decline to exercise our discretion for *de novo* review. *See* ORAP 5.40(8)(c). When reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's disposition and determine whether the evidence was legally sufficient to support civil commitment. *State v. L. R.*, 283 Or App 618, 619, 391 P3d 880 (2017). "[W]e are bound by the trial court's findings of historical fact that are supported by any evidence in the record." *State v. M. J. F.*, 306 Or App 544, 545, 473 P3d 1141 (2020) (internal quotation marks and citations omitted). Whether the evidence was legally sufficient is a question of law. *State v. A. D. S.*, 258 Or App 44, 45, 308 P3d 365 (2013). "Ultimately, in view of the clear-and-convincing-evidence standard of proof that applies in civil commitment proceedings, the question for us as the reviewing court is whether a rational factfinder could have found that it was highly probable that appellant was a danger to [themself]" as a result of a mental disorder. *State v. S. A. R.*, 308 Or App 365, 366, 479 P3d 618 (2021) (internal quotation marks omitted). "[C]lear

---

[1] The judgment ordered appellant to be committed to the custody of the Oregon Health Authority for a period not to exceed 180 days, based on appellant being a "person with mental illness," ORS 426.130(1)(a)(C) (2023), *amended by* Or Laws 2025, ch 559, § 5. New civil commitment statutes became operative on January 1, 2026. Or Laws 2025, ch 559, § 66. Appellant was committed under the prior version of the statutes. The judgment also prohibits appellant from purchasing or possessing a firearm unless he obtains relief from the Psychiatric Security Review Board. *See* ORS 426.130(1)(a)(D) (2023); ORS 166.273 (2023).

[2] Because the order prohibiting purchase or possession of firearms is dependent upon the court's determination that appellant is a danger to himself, and because we reverse that determination, we also reverse the order regarding firearms. *State v. S. R. J.*, 281 Or App 741, 743 n 1, 386 P3d 99 (2016).

and convincing evidence must" demonstrate that there is "a particularized and highly probable threat to the appellant's safe survival, including a risk of substantial harm, in the near future." *State v. S. R. J.*, 281 Or App 741, 749, 386 P3d 99 (2016) (internal quotation marks and brackets omitted). "[T]he prospect of serious physical harm must be based on more than apprehensions, speculations, and conjecture." *Id.* at 750 (internal quotation marks and citation omitted).

Here, the record reflects that appellant's commitment was based in the main on concerns that his mental condition placed him at risk from traffic. Our decision in *S. R. J.*, a case that addressed—and reversed—a commitment based on (in our words) "delusional interactions with traffic," compels the conclusion that the evidence here is not sufficient to support appellant's commitment. In *S. R. J.*, *id.* at 752-53, there was evidence in the record regarding two "traffic encounter[s]." During one encounter, the appellant's conduct "'backed up [traffic] in all directions' because 'everyone at every corner of the intersection was stopped and watching.'" *Id.* at 744. During the second, the appellant was "sitting near, but not in, traffic." *Id.* at 752. We determined that both of those incidents were insufficient to support a danger-to-self commitment because the "possibil[ity]" that the appellant could have "crossed in front of rapidly approaching cars" or the "possibil[ity] that some car had to stop abruptly to avoid hitting" the appellant were "merely speculative." *Id.* The concern in that case—that the "appellant w[ould] be seriously injured in the near future because of her delusional interactions with traffic," did "not rise beyond the level of apprehension and speculation," therefore, reversal was warranted. *Id.* at 750, 758. The record "contain[ed] no evidence that [the] appellant placed herself in the path of any vehicle approaching with enough speed to harm her or that any driver had to stop abruptly to avoid hitting [the] appellant." *Id.* at 752.

Similarly, the record in this case contains no evidence that appellant placed himself in the path of any vehicle. There was no evidence that appellant had ever put himself in the way of traffic and there was no evidence that appellant failed to move out of the way of oncoming traffic.

The psychiatrist who examined appellant did not think that appellant intended to harm himself but thought that defendant might unintentionally place himself in harm's way as a result of his illness.[3] The only evidence addressing the danger that appellant posed to himself was that on two occasions appellant was walking or standing in places that could have put appellant at risk if traffic had been present, and that one of the locations is often busy.[4] Although the officer who took appellant into custody opined that appellant did not appreciate the danger he might be placing himself in, she did not think he intended to harm himself.

The record in this case includes less evidence regarding a risk of substantial harm than what we deemed insufficient in *S. R. J. See id.* at 753 (even if the appellant will repeat similar behavior, "there is no evidence that those situations exposed [the appellant] to the type of danger that [demonstrates] a particularized and highly probable threat to [the] appellant's safe survival" (internal quotation marks and citation omitted)).

Consequently, the evidence is insufficient to support a commitment of appellant on a danger-to-self basis.

Reversed.

---

[3] During the hearing, the psychiatrist opined that if appellant were to follow someone in public, it is possible that the individual could pose a danger to appellant. That is an insufficient basis for commitment because it is "merely speculative on this record," *S. R. J.*, 281 Or App at 752, and we have previously rejected the argument that an appellant is a danger to themself simply if there is a possibility that the appellant's behavior may lead to another person harming the appellant, *State v. D. J.*, 206 Or App 146, 153-54, 135 P3d 397 (2006).

[4] Regarding the first incident, the officer who took appellant into custody testified that appellant was in a place where there "could be traffic," but that "there wasn't much traffic going on on the street" at the time. Regarding the second incident, which the officer did not personally observe, the officer testified that "[t]here is a good amount of traffic" near that intersection.